# EXHIBIT 4

## *NYM COVERAGE POSITION LETTER*



March 23, 2026

**VIA EMAIL (kellena@reedsmith.com)**
**AND CERTIFIED MAIL (RRR)**

Reed Smith LLP
515 Flower Street
Suite 4300
Los Angeles, CA 90071

**Attention**: Katherine J. Ellena, Esq.

> **Re:   Demoree Hadley v. Desiree Perez, et al.**

| | |
|---|---|
| **Insured:** | Roc Nation, LLC |
| **Insurer:** | New York Marine and General Insurance Company |
| **Primary Policy No.:** | PK202300022013 (11/1/23 – 9/25/24) |
| **Umbrella Policy No.:** | UM202300009440 (11/1/23 – 9/25/24) |
| **Claim Nos.:** | EWR00309079 |

Dear Ms. Ellena:

New York Marine and General Insurance Company ("NYM") issued the above-referenced commercial liability insurance policies (collectively, the "Policies") to the Named Insured, Roc Nation, LLC ("Roc Nation"). I have been assigned to handle this matter on behalf of NYM. If you are not Roc Nation's representative for insurance coverage matters, please promptly let us know and forward this correspondence to the person responsible for handling such matters.

## I.   INTRODUCTION

On May 9, 2025, Desiree Perez's daughter, Demoree Hadley ("Demoree"), filed the lawsuit captioned *Demoree Hadley v. Desiree Perez, Roc Nation, et al.,* Case No. 25-cv-22162, in the United States District Court in the Southern District of Florida (the "Lawsuit"). The Lawsuit alleges that Desiree, who is Roc Nation's CEO, concocted false evidence by hacking Demoree's phone and recording the Hadleys in their bedroom, in order to convince physicians and prosecutors to have Demoree involuntarily committed and Demoree's husband arrested on domestic abuse charges, as part of a larger conspiracy with others to breakup Demoree's marriage to her husband.

On June 3, 2025, Demoree filed her Amended Complaint in the Lawsuit. Roc Nation and Desiree subsequently moved to dismiss all claims in the Amended Complaint against them. On October



8, 2025, the Court dismissed Roc Nation with prejudice, and dismissed some, but not all, claims against Desiree in the Amended Complaint.

On that same date, five months after Demoree filed the Lawsuit, Roc Nation's agent placed NYM on notice of the Lawsuit for the first time and tendered the Amended Complaint. The remaining claims against Desiree include conspiracy, false arrest/imprisonment, violation of Demoree's Fourth Amendment rights, violation of the Stored Communications Act, and violation of federal and state wiretap statutes.

NYM has completed its review of the claims and allegations of the Amended Complaint. For reasons explained below, NYM offers to provide Desiree with a defense in the Lawsuit under a full reservation of rights, including the right to deny coverage and withdraw the defense. NYM disclaims coverage for Roc Nation and Desiree's pre-tender defense expenses.

Additionally, NYM has reviewed the facts of the claim known to date, and considered whether any damages, if awarded against Desiree, are covered under the Policies.  Based on the findings of NYM's investigation to date, the Policies will not provide coverage for Desiree for the remaining claims against her. As explained below, Desiree does not meet the Policies' definition of "insured" for claims or damages caused by her personal conduct related to a dispute with her daughter and son-in-law, which is not with respect to her duties as Roc Nation's CEO, outside the scope of her employment, and wholly unrelated to the conduct of Roc Nation's business as a sports and entertainment agency.

## II.    FACTUAL BACKGROUND

### A.    The Amended Complaint

The Amended Complaint alleges that Desiree is CEO of Roc Nation. ¶ 22.  For the past two years, Desiree has used her money, power, and influence to end the Hadleys' marriage. ¶ 27.  Desiree plotted with others to have Javon Hadley ("Javon"), Demoree's husband, falsely arrested, and have Demoree involuntarily committed under Florida's Baker and Marchman Acts. ¶ 28. Desiree's alleged abandonment of Demoree is the cause of current friction between mother and daughter. ¶ 38.

The Amended Complaint alleges that Roc Nation is a company in the entertainment and sports industries that represents entertainers and athletes, selects performers for the Super Bowl, and assists artists with content creation for concerts and movies. ¶ 31-34. Natalie Anderson ("Anderson") is employed by Roc Nation as Desiree's assistant. ¶ 13.  As CEO, Desiree has tech staff with access to expensive technology. ¶ 35.  As related to the Lawsuit, Desiree conspired with others to illegally record the Hadleys in their bedroom, hack Demoree's iPhone, and unlawfully detain the Hadleys on several occasion. ¶ 59.

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



The Amended Complaint asserts 25 separate causes of action against multiple parties, including the following claims against Roc Nation, Natalie Anderson ("Anderson"), and/or Desiree:

Count 1        Violation of RICO against Desiree
Count 2        Civil Conspiracy against Desiree, Roc Nation, and Anderson
Count 3        Civil Conspiracy against Desiree, private investigators, and Dr. Bober
Count 4        Fourth Amendment Violation against Desiree

Count 8        False Arrest/Imprisonment against Desiree
Count 16       Violation of Stored Communications Act against Desiree and Roc Nation
Count 17       Violation of federal Wiretap Act against Desiree
Count 18       Violation of Florida Security of Communications Act against Desiree
Count 19       Intentional Infliction of Emotional Distress against Desiree, private investigators, and Dr. Bober.
Count 25       Malicious Prosecution against Desiree

On October 8, 2025, the court dismissed all claims in the Amended Complaint against Anderson and Roc Nation with prejudice. They are no longer parties to the Lawsuit. The court also dismissed Counts 1, 2, 19, and 25 against Desiree with prejudice. The remaining claims in the Amended Complaint against Desiree are Counts 3, 4, 8, 16-18 above. Demoree's other claims in the Lawsuit are against organizations or individuals who are not insureds under the Policies.

## B.        Wrongful Commitment Claims (Counts 3, 4, and 8)

The Amended Complaint contains the following material allegations: On March 6, 2024, Desiree directed Roc Nation employee Anderson to confront Demoree's therapist. ¶ 212. Anderson presented the therapist with a fabricated audio recording of a female being raped and falsely claimed the recording was of Javon raping Demoree. ¶ 213-214. Desiree wanted the therapist to believe that Demoree had mental health issues that required her involuntary commitment. ¶ 215.

Count 2, "Civil Conspiracy Florida Law" against Desiree, Anderson, and Roc Nation, alleges that Desiree and Anderson conspired to convince Demoree's physician to commit Demoree to a mental health facility. ¶ 394. Anderson was directed by Desiree to confront Demoree's therapist with a fraudulent recording of Javon assaulting Demoree. ¶ 395-396. Anderson was allegedly acting in her capacity as Desiree's assistant at Roc Nation when the incident occurred. ¶ 401.

The Amended Complaint further alleges that on March 27, 2024, Desiree conspired with Dr. Bober to wrongfully commit Demoree to his drug treatment facility. ¶ 220. Desiree hired private investigators to lure Demoree to a property where Dr. Bober detained Demoree against her will. ¶ 223, 226. Demoree was forced to leave with investigators and taken to the hospital. ¶ 269-75, 293-94. Dr. Bober diagnosed Demoree with unspecified psychosis without examining her, ordered 24-hour supervision, and directed hospital staff to medicate her. ¶ 295, 298-299. On March 29, 2024,



Demoree filed a petition with the court falsely accusing Demoree of drug use and requesting that Demoree be transferred to Dr. Bober's facility. ¶ 305-306.

Count 3, "Civil Conspiracy Florida Law" against Desiree, the investigators, and Dr. Bober alleges that Desiree and Dr. Bober conspired with the investigators to falsely imprison Demoree, so that Dr. Bober could detain Demoree, and commit her to his facility, even though Demoree did not use drugs or meet the criteria for involuntary commitment.

Count 4, "Fourth Amendment Violation against Desiree Perez Unlawfully Detained Demoree (Baker Act)", alleges that Desiree intentionally conspired to violate Demoree's Fourth Amendment rights not to be imprisoned without probable cause, and acted under color of state law to deprive Demoree of her right to be free from unlawful seizures.

Count 8, "State Law False Arrest/Imprisonment, Desiree Perez Falsely Imprisoned Demoree Under Florida law", alleges that Desiree conspired with Dr. Bober and investigators to intentionally restrain Demoree without legal authority, directed Dr. Bober and the investigators to detain Demoree without probable cause to believe Demoree met Baker Act criteria for involuntary commitment, and compensated Dr. Bober and the investigators for detaining Demoree.

## C.   Phone Hacking Claims (Count 16)

The Amended Complaint additionally alleges that Desiree hacked, or directed her technical staff at Roc Nation, to hack Demoree's iPhone and iCloud account. ¶ 71. Roc Nation has employees or contractors whose job is to manipulate digital data to control the narrative of any situation. ¶ 75-76. Demoree believes her iPhone was cloned by her mother's team.  ¶ 84.  Desiree, her staff, or contractors used software to manipulate text messages, photographs, and videos, and used the data, and illegal bedroom recordings, to further Desiree's alleged conspiracy to convince people to arrest Javon and commit Demoree against her will. ¶ 89.

Count 16, "Violation of the Stored Communications Act against Desiree Perez and Roc Nation" alleges that Desiree and/or Roc Nation violated Demoree's privacy by accessing and storing private and confidential information from her iCloud account.  ¶ 520.  Desiree and/or Roc Nation accessed text messages, photographs, and video without consent, and knowingly intercepted Demoree's wire and electronic stored communications, allegedly with intent to harm the Hadleys and maintain over control Demoree.  ¶ 521-522.  As a result of Desiree and Roc Nation's alleged conduct, Demoree has suffered emotional distress, economic, non-economic, and statutory damages, punitive damages, and attorney's fees and costs.  ¶ 524.

## D.   Illegal Wiretap Claims (Counts 17 and 18)

The Amended Complaint also alleges that Desiree conspired with others to plant a camera and listening device in the Hadleys' bedroom without their knowledge. ¶ 61, 65. Desiree recorded the Hadleys' conversations and submitted those recordings to the prosecutor in Javon's criminal case

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



prior to September 11, 2023. ¶ 68. Demoree and Javon did not discover the recording devices until the prosecutor dropped the assault charges against him in late 2024. ¶ 70.

Counts 17 of 18 the Amended Complaint allege that Desiree violated the Federal Wiretap Act and Florida Security of Communications Act, respectively, by intentionally intercepting the Hadleys' communications using recording devices placed in their bedroom.  ¶ 527-528, 534-535. Desiree's interception of communications was allegedly done with intent to harm and maintain control over Demoree. ¶ 530, 536.

### III.    <u>COVERAGE PROFILE</u>

NYM issued policy number PK202300022013 to the Named Insured, Roc Nation, LLC, effective from November 1, 2023 to September 25, 2024, with coverage limits of $1,000,000 each occurrence, personal & advertising injury limits of $1,000,000, and general aggregate limits of $2,000,000 (the "CGL Policy").

The CGL Policy's Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, as amended by New York Changes – Commercial General Liability Coverage Form endorsement (CG 01 63 04 17), states in relevant part:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * *

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period.

* * *

The CGL Policy contains certain exclusions to Coverage A – Bodily Injury and Property Damage Liability, including:

    **2.  Exclusions**

       This insurance does not apply to:



**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

The CGL Policy's Section I – Coverages, Coverage B – Personal and Advertising Injury Liability, as amended by New York Changes – Commercial General Liability Coverage Form endorsement, states in relevant part:

### COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed during the policy period.

\* \* \*

The CGL Policy contains certain exclusions to coverage for Personal and Advertising Injury Liability, including:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

* * *

The CGL Policy's Section II – Who Is An Insured provision, defines "insured" in relevant part as follows:

1. If you are designated in the Declarations as:

* * *

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are also insureds, but only with respect to their duties as your managers.

* * *

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

* * *

The CGL Policy's Section IV – Commercial General Liability Conditions states in relevant part:

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

b. If a claim is made or "suit" is brought against any insured, you must:
   (1) Immediately record the specifics of the claim or "suit" and the date received; and
   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

\* \* \*

**d.** No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, incur any expense, other than for first aid, without our consent.

\* \* \*

The CGL Policy's Section V contains the following relevant Definitions:

## SECTION V- DEFINITIONS

\* \* \*

**3**. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the  same general harmful conditions.

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress, or slogan in your "advertisement".

\* \* \*

**17.** "Property damage" means:

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.
As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

* * *

The words "you" and "your" refer to "the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy", and "insured" means "any person or organization qualifying as such under Section II – Who Is An Insured".

* * *

NYM also issued policy number UM202300009440 to the Named Insured, Roc Nation, LLC, effective from November 1, 2023 to September 25, 2024, with coverage limits for umbrella-excess liability of $10,000,000 each occurrence and $2,000,000 general aggregate limits (the "CUL Policy").

The CUL Policy's Section I. Coverages, Coverage A – Excess Liability – Insuring Agreement states in relevant part:

**A. COVERAGE A – EXCESS LIABILITY INSURING AGREEMENT**

1. This coverage applies only to injury or damage covered by "underlying insurance". The definitions, terms, conditions, limitations, exclusions and warranties of the "underlying insurance" in effect at the inception of this policy apply to this coverage unless they:

   a. Conflict with the provisions of this insurance; or

   b. Relate to any of the following: premium; our right to recover payment; "other insurance"; any duty to investigate; the amount or limits of insurance; the payment of expenses; cancellation; or any renewal agreement.

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



2. We will pay on behalf of any insured those sums in excess of "underlying insurance" or "other insurance" that any insured becomes legally obligated to pay as damages to which this insurance applies. If "underlying insurance" does not pay any claim or "suit" for any reason other than exhaustion of their limits of insurance, we will not pay such claim or "suit".

3. Coverage A applies only to "occurrences" which take place during this policy period.

4. The amount we will pay for damages is limited in SECTION III. LIMITS OF INSURANCE.

* * *

The CUL Policy's Section I. Coverages, Coverage B – Umbrella Liability – Insuring Agreement states in relevant part:

**B. COVERAGE B – UMBRELLA LIABILITY – INSURING AGREEMENT**

**1. We will pay on behalf of any insured those sums that the insured becomes legally obligated to pay in excess of the "self insured retention" as damages because of:**

   **a. Bodily Injury or Property Damage**

     **(1)** This insurance applies to "bodily injury" or "property damage" only if:
       **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
       **(b)** The "bodily injury" or "property damage" occurs during this policy period;

* * *

   **b. Personal and Advertising Injury**

   This insurance applies to "personal and advertising injury" which is caused by an offense arising out of your business but only if the offense is committed in the "coverage territory" during this policy period.

* * *

The CUL Policy's Section I. Coverages, Exclusions Under Coverage B Only, states in relevant part:

**D. EXCLUSIONS UNDER COVERAGE B ONLY**

Insurance provided under Coverage B does not apply to:

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



1. **Personal and Advertising Injury**

   "Personal and advertising injury" including any consequential "bodily injury":

   \* \* \*

   b. Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   \* \* \*

   e. Arising out of oral or written publication of material if done by or at the direction of any insured with knowledge of falsity;

   f. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   \* \* \*

6. **Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of any insured.  But this does not apply to "bodily injury" or "property damage" which results from the use of reasonable force to protect persons or property.

   \* \* \*

10. **Electronic Data**

   Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

   \* \* \*

The CUL Policy's Section II. Who Is an Insured, defines "insured" in relevant part:



\* \* \*

**B.  UNDER COVERAGE A ONLY**

\* \* \*

**2. Persons Or Organizations Insured in "underlying insurance"**

Any person or organization who is an insured in the "underlying insurance" at the inception of this policy is an insured.

\* \* \*

**C.  UNDER COVERAGE B ONLY**

\* \* \*

**2. Named Insureds**

"Named insureds" are insureds as follows:

\* \* \*

**c.**  A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business. Your managers are also insureds, but only with respect to their duties as your managers.

\* \* \*

**3.**  Each of the following is also an insured:

**a.**  Your "volunteer workers" only while performing duties related to the conduct of your business or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

\* \* \*

The CUL Policy's Section V. Definitions states in relevant part:

**A.  Definitions Used in The "Underlying Insurance"**

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



Except for the definitions contained in **Section V. Definitions, B. Definitions Used In This Coverage Part,** the definitions contained in the "underlying insurance" apply to **Coverage A** of this insurance.

Under **Coverage B** of this insurance, and under **Coverage A** of this insurance when there is no definition in the "underlying insurance", the following definitions apply:

\* \* \*

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

12.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;
    b.  Malicious prosecution;
    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;
    f.  The use of another's advertising idea in your "advertisement"; or
    g.  Infringing upon another's copyright, trade dress, or slogan in your "advertisement".

\* \* \*

15. "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

* * *

**B. Definitions Used In This Coverage Part:**

The following definitions supersede the same definitions in "underlying insurance".

As used in this Coverage Part, the following definitions apply:

* * *

2. "Named Insured" means any persons or organizations show in the named insured section of the Declarations of this coverage Part.  Refer to the WHO IS AN INSURED section of this Coverage Part.

3. "Occurrence"

   The definition of "occurrence" contained in the "underlying insurance" applies to Coverage A of this insurance, whether described as an "occurrence", injury, offense or wrongful act.

   Under Coverage B of this insurance, "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  With respect to "personal and advertising injury', the term means "personal and advertising injury" offense.

* * *

10. "Underlying insurance" means any policies of insurance listed in the declarations under the schedule of "underlying insurance".

* * *

The CUL Policy's Schedule of Underlying Insurance identifies the CGL Policy as "Underlying insurance".  The CUL Policy's words "you" and "your" refer to "the 'named insured' shown in the Declarations and any other person or organization qualifying as a 'named insured' under this policy", and "insured" means "any person or organization qualifying as such under Section II – Who Is An Insured".

## IV.    COVERAGE POSITION

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com



By referring to the allegations in the Lawsuit, NYM does not adopt or accept the truthfulness of any of the allegations against you. However, NYM must consider those allegations to evaluate its coverage obligations with respect to this matter. NYM's recitation of certain allegations, but not other allegations, should not be construed as a waiver of NYM's rights to rely upon any or all allegations. Coverage under the CGL and CUL Policies are subject to the same terms, conditions, definitions, exclusions, limits, and endorsements for this matter.  With this understanding in mind, NYM disclaims coverage and reserves its rights with respect to this matter for reasons explained below.

### A.       No Coverage for Pre-Tender Defense Expenses

There is no coverage under the Policies for any defense expenses that were incurred by Roc Nation or Desiree prior to the date this matter was tendered to NYM on October 8, 2025.   This is so because pre-tender defense expenses constitute voluntary payments made without NYM's consent before Roc Nation and Desiree placed NYM on notice of the Lawsuit.  Because Roc Nation and Anderson were dismissed from the Lawsuit with prejudice on October 8, 2025, there is no possible coverage under the Policies for Roc Nation and Anderson for their defense costs.  Accordingly, NYM disclaims coverage for pre-tender defense expenses incurred by Roc Nation, Desiree, and Anderson.

### B.       Coverage for Remaining Claims in the Lawsuit Against Desiree Perez

Coverage under the Policies only applies to damages that an "insured" must pay as damages because of "bodily injury" or "personal and advertising injury" to which coverage applies.  Under the Policies, when a limited liability company is the named insured, the company's members are also "insureds", but only with respect to conduct of the company's business. The company's managers are also "insureds", but only with respect to their duties as the company's managers. The company's employees are "insureds" for acts within the scope of their employment or while performing duties related to the conduct of the company's business.

For the remaining claims against Desiree in the Lawsuit (Counts 3, 4, 8, 16-18), the alleged damages arise out of Desiree's personal conduct allegedly for the purpose of maintaining control over Demoree and breaking up the Hadleys' marriage, which is unrelated to Desiree's duties as CEO, outside the scope of her employment, and unrelated to the conduct of Roc Nation's business. Accordingly, NYM reserves the right to disclaim coverage for any damages in the Lawsuit for which Desiree does not qualify as an "insured" under the Policies.

#### 1.       Bodily Injury and Property Damage Liability Coverage

Under the Policies' Insuring Agreement for Bodily Injury and Property Damage Liability, coverage applies to sums an insured must pay as damages because of "bodily injury" caused by an "occurrence" during the policy period and to which coverage applies. The Policies define



"occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." To the extent that the allegations or facts of the Lawsuit do not constitute damages for "bodily injury" or "property damage" caused by an "accident" to which coverage applies, or for injuries or damages that did not occur during the policy period from November 1, 2023 to September 25, 2024, NYM reserves the right to deny coverage under the Insuring Agreement for Bodily Injury and Property Damage Liability.

The Policies contain the Expected Or Intended Injury Exclusion, which excludes coverage for "bodily injury" that is expected or intended from the insured's standpoint. To the extent that the allegations or facts of the Lawsuit are for injuries intentionally caused by Desiree's conduct, NYM reserves the right to deny coverage pursuant to the Expected Or Intended Injury Exclusion.

2.      **Personal and Advertising Injury Liability Coverage**

Under the Policies' Insuring Agreement for Personal and Advertising Injury Liability, coverage applies to sums an insured must pay as damages because of "personal and advertising injury" that is caused by an offense, which is arising out of the named insured's business, and was committed during the policy period. To the extent that the allegations or facts of the Lawsuit do not constitute damages because of "personal and advertising injury" that is caused by an offense arising out of Roc Nation's business, or that occurs outside the policy period, NYM reserves the right to deny coverage under the Insuring Agreement for Personal and Advertising Injury Liability.

The Policies contain the Knowing Violation Of Rights Of Another Exclusion, which excludes coverage for "personal and advertising injury" caused by or at the direction of the insured with knowledge that the act would violate the rights of another and inflict "personal and advertising injury". To the extent that the allegations or facts of the Lawsuit are for "personal and advertising injury" offenses committed by Desiree, or at her direction, with knowledge that these offenses would violate Demoree's rights, NYM reserves the right to deny coverage pursuant to the Knowing Violation Of Rights Of Another Exclusion.

The Policies contain the Material Published With Knowledge Of Falsity Exclusion ("Knowledge of Falsity Exclusion"), which excludes coverage for "personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity. To the extent that the allegations or facts of the Lawsuit are for Desiree's publication of materials with knowledge of their falsity, NYM reserves the right to deny coverage pursuant to the Knowledge of Falsity Exclusion.

The Policies contain the Material Published Prior To Policy Period Exclusion ("Prior Publication Exclusion"), which excludes coverage for "personal and advertising injury" arising out of publication of material published prior to the policy period. To the extent that the allegations or facts of the Lawsuit are for "personal and advertising injury" arising out of Desiree's publication of false statements about the Hadleys prior to November 1, 2023, NYM reserves the right to deny coverage pursuant to the Prior Publication Exclusion.



## V.    CONCLUSION

For reasons explained above, NYM offers to defend Desiree under a reservation of rights under the Policies in connection with the Lawsuit. NYM's offer of a defense is subject to a complete reservation of rights, including the right to deny coverage and withdraw the defense.  NYM disclaims coverage for pre-tender defense costs.

Because NYM has agreed to provide a defense under a reservation of rights, NYM informs you of the right to select independent counsel at NYM's reasonable expense. To that end, NYM previously retained Jeremy Colvin of Cole Scott & Kissane ("CSK") to defend Desiree. However, on March 20, 2026, Amber Finch of Reed Smith LLP advised that they have requested CSK to refrain from any further contact with opposing counsel or the insureds' counsel pending an agreement with NYM and demanded written confirmation of NYM's reservation of rights, formal acceptance of the defense of Ms. Desiree Perez, Ms. Natalie Anderson, and Roc Nation, LLC, and information regarding the processing and reimbursement of defense fees and costs incurred to date. NYM acknowledges receipt of that correspondence and will coordinate with counsel selected by Desiree to agree upon reasonable fees pursuant to NYM's litigation guidelines.  NYM will not defend Roc Nation nor Anderson since they are not parties to the lawsuit and, as previously discussed, coverage is denied for their pre-tender defense expenses.

NYM reserves the right to seek contribution for defense costs and indemnity from any other insurers that may provide coverage for this claim under other policies issued to Roc Nation and/or Desiree.  If Desiree has any other insurance policies with coverage that may apply to this claim, including but not limited to directors and offices, errors and omissions, homeowners, renters, excess, or umbrella policies, NYM requests that you promptly advise us about the existence of other insurance, provide copies of relevant policies as well as adjuster contact information, and put these insurers on notice of the Lawsuit as soon as practicable.

NYM reserves the right to recoup any expenses or amounts incurred in the defense, including without limitation, attorney's fees and costs, to the extent there is a determination that NYM does not owe a defense or indemnity under the Policies for this claim.

No action undertaken by NYM in investigating the allegations or facts in connection with the Lawsuit shall be construed as waiving any right or operating as an estoppel to assert any right which NYM has under the law or Policies, nor shall any such action be deemed in any way to be an admission of liability or an admission of coverage under the Policies. The failure of this correspondence to reference other terms, conditions, definitions, or exclusions of the Policies shall not constitute a waiver of any rights or coverage defenses available to NYM and does not preclude NYM's ability to assert them in the future whether those rights are presently identifiable or later identified.

NYM's position on coverage is based on the information known at this time and the terms of the



Policies.  This letter is not intended to be, nor is it to be construed as an exhaustive listing of all the terms, conditions, limitations, exclusions, or endorsements of the Policies that might limit or preclude coverage for this matter.  NYM will reevaluate this coverage position at any time if there is a material change in the allegations or the facts known to NYM.  If you have any additional information that you believe is pertinent to the coverage issues raised under the Policies, NYM asks that you provide this information as soon as possible to allow us to reevaluate coverage.

If you are served with any additional pleadings, demands, or settlement offers, NYM asks you to promptly provide these documents and information to NYM. NYM reserves the right to review any additional claims or amendments to the Lawsuit, and to make or seek a separate determination as to whether a defense or indemnity might be provided.

Please contact the undersigned if you have any questions or comments regarding the contents of this letter or if you wish to further discuss NYM's coverage position.

Kindest Regards,

*Roman Lebedinskiy*

Roman Lebedinskiy
AVP, Claims

cc:     RSG Specialty, LLC (MN)
        180 N. Stetson Avenue, Suite 4600
        Chicago, IL 60601-6746

        Veronica Rodriguez
        Keyes Coverage, Inc.
        vrodriguez@keyscoverage.com

412 Mount Kemble Ave, Suite 300C Morristown, NJ 07960
Tel: 973-532-6469
rlebedinskiy@coactionspecialty.com