**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

NEW YORK MARINE AND
GENERAL INSURANCE COMPANY,

      Plaintiff,

                                      Case No. 1:26-cv-22329

v.

DESIREE PEREZ, and
DEMOREE HADLEY,

      Defendants.

_____/

**<u>DEFENDANT PEREZ'S MOTION TO DISMISS</u>**
**<u>OR, IN THE ALTERNATIVE, MOTION TO STAY</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

RELEVANT FACTUAL BACKGROUND.......................................................................... 3

      A.      The NYM Commercial General Liability Policies ................................. 3

      B.      The *Hadley* Action........................................................................................ 3

      C.      Roc Nation's Insurance Claim and NYM's Response............................ 4

      D.      Roc Nation's Concurrent Coverage Action Filed in New York State Court .......... 5

ARGUMENT ....................................................................................................................... 6

I.      The Court Should Decline to Exercise its Discretion under the Declaratory Judgment Act and Dismiss NYM's Suit in Favor of the Pending New York State Action.................................................................................................................... 6

      A.      The Eleventh Circuit's *Ameritas* Framework Governs the Court's Analysis on the Dismissal of NYM's Complaint. ................................... 7

      B.      The *Ameritas* Factors Warrant Dismissal of NYM's Complaint............................ 8

            1.      The *Ameritas* Factors Involving Comity and New York's Interest in Resolving This Dispute Weigh in Favor of Dismissal............................... 9

            2.      NYM's Decision to File the Declaratory Judgment Action in the Southern District of Florida Constitutes Improper Forum Shopping and "Procedural Fencing." ....................................................................... 10

            3.      New York State Court is in Superior Position to Resolve the Present Coverage Dispute...................................................................................... 12

            4.      The New York State Action Provides Superior Judicial Efficiency and Economy. ............................................................................................ 12

II.     Regardless of how this Court Resolves the *Ameritas* Analysis, it must Dismiss NYM's Duty to Indemnify Counts (VIII–XIV) for Lack of Subject Matter Jurisdiction because those Claims are not Ripe under Article III..................................... 14

III.    Alternatively, this Court Should Exercise its Inherent Authority and Stay this Action Pending Resolution of the New York State Action and the *Hadley* Action. ........ 17

CONCLUSION................................................................................................................... 20

REQUEST FOR ORAL ARGUMENT .............................................................................. 20

CERTIFICATE OF SERVICE ..................................................**Error! Bookmark not defined.**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*200 Leslie Condo. Ass'n v. QBE Ins. Corp.*,
No. 10-61984-CIV-ROSENBAUM, 2011 U.S. Dist. LEXIS 65720 (S.D. Fla.
Jun. 21, 2011)...........................................................................................................17

*Ameritas Variable Life Ins. Co. v. Roach*,
411 F.3d 1328 (11th Cir. 2005) ................................................................ *passim*

*Barker v. Cap. One, N.A.*,
801 F. Supp. 3d 1327 (S.D. Fla. 2025) ............................................................11, 15

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942)............................................................................................6, 7, 18

*Cowan v. Provident Life & Accident Ins. Co.*,
No. 18-CV-21156, 2018 U.S. Dist. LEXIS 223448 (S.D. Fla. Nov. 28, 2018).................15, 16

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
685 F.2d 1284 (11th Cir. 1982) ...........................................................................17

*Depositors Ins. Co. v. BGW Design Ltd.*,
No. 17-23885-Civ-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 33666
(S.D. Fla. Feb. 28, 2018).........................................................................................16

*Endurance Assurance Corp. v. Zoghbi*,
403 F. Supp. 3d 1301 (S.D. Fla. 2019) ............................................................ *passim*

*Goodwin v. Walton County Florida*,
248 F. Supp. 3d 1257 (N.D. Fla. 2017)..................................................................15

*Great Am. Ins. Co. v. Origis USA, LLC*,
No. 23-22132-Civ, 2023 U.S. Dist. LEXIS 196642 (S.D. Fla. Nov. 2, 2023) ................ *passim*

*Great Lakes Reinsurance PLC v. Leon*,
480 F. Supp. 2d 1306 (S.D. Fla. 2007) ...........................................................18, 20

*Gregory Haskin Chiropractic Clinics, Inc. v. State Farm Mut. Auto. Ins. Co.*,
391 F. Supp. 3d 1151 (S.D. Fla. 2019) ..............................................................18

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
143 F.3d 1006 (5th Cir. 1998) ..............................................................................15

*J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*,
571 F. App'x 918 (11th Cir. 2014) .......................................................................16

*Kilpatrick v. Caribbean Cruise Line, Inc.*,
  No. 14-cv-61572-BLOOM/Valle, 2014 U.S. Dist. LEXIS 139382 (S.D. Fla.
  Sept. 29, 2014) ........................................................................................................17

*Kirby v. Siegelman*,
  195 F.3d 1285 (11th Cir. 1999) ...............................................................................15

*Landis v. North American Co.*,
  299 U.S. 248 (1936)..................................................................................................17

*Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*,
  766 F. App'x 768 (11th Cir. 2019) ...........................................................................16

*Mid-Continent Cas. Co. v. Gozzo Dev., Inc.*,
  No. 17-80362, 2017 U.S. Dist. LEXIS 134185 (S.D. Fla. July 19, 2017).........................18, 19

*Morrison v. Allstate Indem. Co.*,
  228 F.3d 1255 (11th Cir. 2000) ...............................................................................15

*Mulhall v. Unite Here Local 355*,
  618 F.3d 1279 (11th Cir. 2010) ...............................................................................15

*Nat'l Tr. Ins. Co. v. S. Heating and Cooling Inc*,
  12 F.4th 1278 (11th Cir. 2021) ..................................................................................8

*S.-Owners Ins. Co. v. Highwoods Contracting Corp.*,
  No. 6:22-cv-2177-CEM-RMN, 2023 U.S. Dist. LEXIS 165613 (M.D. Fla.
  Sep. 18, 2023) ..........................................................................................................15

*Serpentfoot v. Rome City Comm'n*,
  322 F. App'x 801 (11th Cir. 2009) ...........................................................................15

*Smithers Constr., Inc. v. Bituminous Cas. Corp.*,
  563 F. Supp. 2d 1345 (S.D. Fla. 2008) ....................................................................16

*Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*,
  No. 12-CV-81397-KAM, 2015 U.S. Dist. LEXIS 102445 (S.D. Fla. Aug. 5,
  2015) ...........................................................................................................................8

*Texas v. United States*,
  523 U.S. 296 (1998)..................................................................................................15

*W. Coast Life Ins. Co. v. Ruth Secaul
  2007-1 Ins. Tr.*, No. 09-81049-CIV, 2010 U.S. Dist. LEXIS 151589 (S.D. Fla.
  May 14, 2010)............................................................................................................13

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)........................................................................................6, 18, 20

iii

*Zee v. Ironshore Specialty Ins. Co.*,
   No. 12-61222-CIV-DIMITROULEAS, 2012 U.S. Dist. LEXIS 194847 (S.D.
   Fla. Nov. 30, 2012) ...................................................................................................................8

**Statutes**

28 U.S.C. § 1332.......................................................................................................................11

28 U.S.C. § 2201.........................................................................................................................5

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)............................................................................................................15

Defendant Desiree Perez ("Mrs. Perez"), pursuant to this Court's inherent judicial authority and Federal Rule of Civil Procedure 12(b)(1), respectfully moves to dismiss all claims asserted against her in Plaintiff New York Marine and General Insurance Company's ("NYM") Complaint for Declaratory Judgment.[1] In the alternative, Mrs. Perez moves for an order staying all claims pending resolution of the parallel coverage action styled *Roc Nation LLC v. New York Marine and General Insurance Company*, currently pending in the Supreme Court of the State of New York, County of New York (the "New York State Action") and the underlying action styled *Demoree Hadley v. Desiree Perez, Roc Nation, et al.*, Case No. 25-cv-22162-BLOOM, in the United States District Court in the Southern District of Florida (the "*Hadley* Action"). In support of this Motion, Mrs. Perez states as follows:

## INTRODUCTION

In a sprint to the courthouse, NYM engaged in improper procedural fencing when it manufactured diversity jurisdiction in order to bring this declaratory judgment action in federal court in Florida. Mere days after it issued its much-delayed coverage position letter impacting *multiple* insureds under *commercial* liability policies issued in New York, NYM cherry-picked a *single* insured *individual*, Mrs. Perez, as a target of its declaratory judgment action. Rather than address the full scope of the coverage dispute raised in its letter, NYM limited its action to the one non-New York resident insured under the policies concocting "complete diversity" before this Court. However, the full coverage dispute under the commercial policies involves *two* New York

---

[1] While Paragraphs 6 and 7 of the Court's April 7, 2026 Order in Cases with Multiple Defendants provides that all defendants must jointly file any motions, because Mrs. Perez' co-defendant, Ms. Demoree Hadley, has not made an appearance in this action as of the time of the filing of this Motion (despite the Court's Order requiring an appearance within 21-days of service), counsel for Mrs. Perez has been unable to confer with counsel for Ms. Hadley. Moreover, because the jurisdictional issues raised in this motion are unique to Mrs. Perez, the undersigned does not believe there is a "conflict" of positions as contemplated by Paragraph 7 of the Court's Order.

insureds, including its named insured, Roc Nation LLC ("Roc Nation"). The more comprehensive dispute will be adjudicated in a pending New York state court action that is not removable to federal court because diversity is lacking and the coverage issues are governed solely by New York state law. Under these circumstances, courts in the Eleventh Circuit, guided by the principles set forth by the United States Supreme Court, warn federal trial courts to avoid interfering with the state court action and decline to exercise their discretion to proceed with the federal declaratory judgment action. In similar fashion, this Court should uphold principles of federalism, comity and efficiency and dismiss NYM's declaratory judgment action.

Additionally, this Court lacks subject matter jurisdiction over a significant portion of NYM's declaratory judgment action because there is no justiciable case or controversy under Article III. Half of the counts alleged seek declarations that are not ripe. Specifically, seven of the counts seek declarations on NYM's duty to indemnify Roc Nation's Chief Executive Officer in connection with the *Hadley* Action. However, the *Hadley* Action is also still active. Discovery is ongoing. The key facts controlling the application of the policy provisions and exclusions on which NYM relies are very much in dispute and have yet to be established by the trier of fact. No settlement has been reached and no judgment has been entered. Accordingly, NYM's indemnification duties *cannot* yet be determined. In essence, NYM asks this Court to issue a premature advisory opinion on indemnity obligations that do not yet exist. This Court must resist this request. Simply put, NYM jumped the gun when it filed this case. This Court has no jurisdiction to hear these claims and they must be dismissed.

Even if the Court declines to dismiss NYM's declaratory judgment action in the face of these procedural and jurisdictional defects, at minimum, the Court should stay this case pending the adjudication of the parallel New York State Action and the *Hadley* Action. Doing so upholds

2

the principles of federalism and promotes judicial economy and efficiency.

**RELEVANT FACTUAL BACKGROUND**

**A.      The NYM Commercial General Liability Policies.**

NYM, an insurer headquartered and incorporated in New York, issued two commercial liability policies to Roc Nation at its address in New York City. [DE 1-2, at 17; DE 1-3, at 10]. The policies consisted of a primary commercial general liability policy (the "CGL Policy"), and an umbrella-excess liability policy (the "Excess Policy") (collectively, the "Policies"). [DE 1, ¶¶ 30, 41]. The Excess Policy follows form to the underlying CGL Policy and provides excess coverage subject to the same general terms and conditions. [*Id.*, ¶ 45]. The Policies were effective November 1, 2023 through September 25, 2024. [*Id.*]. The Policies expressly cover Roc Nation, as the Named Insured, as well as its members, managers, executive officers, and employees (collectively, the "Roc Nation Insureds"). [DE 1-2]. The Policies broadly provide defense and indemnity coverage for claims of "bodily injury" and "personal and advertising injury," including alleged offenses such as false arrest, detention, imprisonment, and invasion of the right of privacy. [DE ¶¶ 38-39; DE 1-2]. The Insuring Agreement in the Policies specifically provides that "we will pay those sums that the insured becomes legally obligated to pay as damages …." and "[w]e will have the duty to defend the insured against any 'suit' seeking those damages even if the allegations of the 'suit' are groundless, false or fraudulent." [DE 1 ¶ 33; DE 1-2].

**B.      The *Hadley* Action**

On May 9, 2025, Demoree Hadley ("Mrs. Hadley") filed the *Hadley* Action against Roc Nation, Mrs. Perez, Natalie Anderson (a Roc Nation employee), and other defendants. [DE 1 ¶ 33]. On June 3, 2025, Mrs. Hadley filed an Amended Complaint asserting claims against the same parties, but expanding the factual allegations and counts. [*Id.* ¶ 35]. The Amended Complaint asserts twenty-five causes of action, ten of which were asserted against Roc Nation, Ms. Anderson,

3

and/or Mrs. Perez, including for: Civil Conspiracy; Fourth Amendment violations; False Arrest/Imprisonment; Violation of the Stored Communications Act; Violations of the Federal Wiretap Act and Florida Security of Communications Act; and Infliction of Emotional Distress. [*Id.* ¶¶ 42-49]. The Amended Complaint alleges that the conduct at issue constituted Roc Nation business operations. Specifically, the Amended Complaint alleges that Mrs. Perez acted in her capacity as CEO of Roc Nation, Ms. Anderson acted in her capacity as Mrs. Perez's assistant at Roc Nation, and Roc Nation's personnel and resources were utilized in furtherance of the alleged conduct. [*Id.* ¶ 38; DE 1-1, ¶¶ 394, 400].[2] The Amended Complaint seeks compensatory damages, punitive damages, statutory damages, and attorneys' fees and costs. [DE 1 ¶ 50]. While certain parties and claims have since been dismissed from the *Hadley* Action, the *Hadley* Action remains active and the parties are involved in protracted litigation. [*Id.* ¶¶ 51-53]. The truth of the allegations are heavily disputed by the parties. [*Id.* ¶ 51]. Discovery is ongoing. [*Id.*].  No settlement has been reached with Mrs. Perez, and no judgment has been entered. [*Id.*].

> **C.      Roc Nation's Insurance Claim and NYM's Response**

Following the filing of the *Hadley* Action, Roc Nation tendered the claims to NYM for defense and indemnification on behalf of itself, Mrs. Perez, and Ms. Anderson. [*Id.* ¶ 54].[3] NYM's response was silence. [*Id.* ¶ 55]. For months, NYM ignored Roc Nation's repeated follow-up communications, forcing them to fund their own defense. [*Id.*].

Nearly a year after the *Hadley* Action was filed, on March 23, 2026, NYM finally issued

---

[2] The court in the *Hadley* Action found that "the Amended Complaint fails to allege that [Mrs.] Perez and [Ms.] Anderson acted in their personal capacities" and that "[t]here was no allegation that [Perez, Anderson, and ROC Nation] acted in a personal capacity apart from [their] employee status." [DE 1 ¶ 52].

[3] To be clear, Mrs. Perez has never tendered a personal insurance claim to NYM for the *Hadley* Action. Rather, Roc Nation submitted an insurance claim on behalf of itself and its insureds, including Mrs. Perez.

its written coverage position. [*Id.* ¶ 61]. In that letter, NYM denied coverage for the claims against Roc Nation and Ms. Anderson, but agreed to defend the claims against Mrs. Perez subject to a reservation of rights. [*Id.*]. However, in an apparent about-face, just eleven days later, on April 3, 2026, NYM filed this declaratory judgment action in federal court *in Florida* solely against Mrs. Perez, alleging that the Policies do not afford insurance coverage to Mrs. Perez for the underlying *Hadley* Action. [*See generally* DE 1]. NYM's declaratory judgment action is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, and seeks declaratory judgments that (1) it has no duty to defend Mrs. Perez in the *Hadley* Action and (2) it has no duty to indemnify Mrs. Perez in the *Hadley* Action. [*Id.* ¶¶ 1, 49-113]. NYM filed this action in federal court alleging complete diversity on the grounds that NYM's principal place of business is in New York, Mrs. Perez resides in New Jersey, and Mrs. Hadley resides in Florida. [*Id.* ¶¶ 2-5]. NYM did not name Roc Nation (a New York company) or Ms. Anderson (a New York employee) as a defendant in the declaratory judgment action. [*See generally* DE 1]. Further, NYM's declaratory judgment action makes no mention of its coverage position as to the claims against Roc Nation or Ms. Anderson in the *Hadley* Action. [*Id.*].

> **D.      Roc Nation's Concurrent Coverage Action Filed in New York State Court**

On June 28, 2026, Roc Nation filed its own coverage suit against NYM in the Supreme Court of New York. [RJN, **Ex. A**]. Roc Nation's New York State Action is broader than NYM's declaratory judgment action as it encompasses the full scope of the coverage dispute between the parties, including as to Roc Nation (as the Named Insured) and Mrs. Perez and Ms. Anderson (as an officer and employee of Roc Nation, respectively). [*Id.*]. Not only does the New York State Action challenge NYM's assertions in the instant action, it also specifically challenges NYM's declination of coverage for the claims against Roc Nation and Ms. Anderson in the *Hadley* Action. [RJN, **Ex. A**]. The New York State Action asserts claims for breach of contract, breach of the

implied covenant of good faith and fair dealing, and seeks declaratory relief regarding NYM's defense obligations under the Policies in connection with the *Hadley* Action. The New York State Action seeks, among other things, reimbursement of all defense fees and costs incurred on behalf of all of the Roc Nation Insureds. [RJN, **Ex. A**]. Unlike this narrow, strategically truncated federal action, the New York State Action will resolve the entire coverage dispute between NYM and all of its insureds under the Policies in connection with the *Hadley* Action. [RJN, **Ex. A**; DE 1].

## ARGUMENT

**I.      The Court Should Decline to Exercise its Discretion under the Declaratory Judgment Act and Dismiss NYM's Suit in Favor of the Pending New York State Action.**

As a threshold matter, because Roc Nation has filed its own coverage action against NYM involving the same coverage issues in New York state court, this Court need not and should not allow NYM's declaratory judgment action to proceed. The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted). "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). In cases like this, the United States Supreme Court has made it clear that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495; *Ameritas*, 411 F.3d at 1330. Accordingly, the Supreme Court has warned lower courts that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495. The Eleventh Circuit has consistently followed this precedent and noted that "[t]his warning should be heeded." *Ameritas*, 411 F.3d at

6

1330. This Court should follow suit, dismiss this case, and defer the adjudication of the coverage dispute to the pending New York State Action.

> **A.  The Eleventh Circuit's *Ameritas* Framework Governs the Court's Analysis on the Dismissal of NYM's Complaint.**

Where, as here, "'another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties,'" the Eleventh Circuit has established a framework designed to aid district courts in balancing state and federal interests. *Ameritas*, 411 F.3d at 1330 (quoting *Brillhart*, 316 U.S. at 495). This framework was established in response to the Supreme Court's guidance under the Declaratory Judgment Act, as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts." *Id*. at 1331 (citation omitted). Where an insured has brought a parallel coverage action in another state court, federal district courts in this Circuit follow *Ameritas* regarding an insurer's federal declaratory judgment action and have declined to allow the federal action to proceed. *Great Am. Ins. Co. v. Origis USA, LLC*, No. 23-22132-Civ, 2023 U.S. Dist. LEXIS 196642, at *5-6 (S.D. Fla. Nov. 2, 2023) (court noted in its analysis that both the federal action and the later-filed state court action were declaratory judgment suits and both cases involved the insurer's duties to the insured under the insurance policies and fell squarely within the *Ameritas* framework); *Endurance Assurance Corp. v. Zoghbi*, 403 F. Supp. 3d 1301, 1307-08 (S.D. Fla. 2019) (holding that even though the complaint before the court included a rescission claim, at the heart of the dispute this was a declaratory judgment action and therefore the *Ameritas* framework was applicable).

Here, it is undisputed that another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. First, the New York State Action is pending

7

before the Supreme Court of New York and involves the same coverage issues presented in this instant action – namely, NYM's obligations to its insureds under the Policies in response to Roc Nation's tender for coverage for the *Hadley* Action. Second, these coverage issues are governed solely by New York law[4] not federal law. Further, the dispute in the New York State Action involves the same parties involved here: NYM and the Roc Nation Insureds, including Mrs. Perez.[5]

**B.        The *Ameritas* Factors Warrant Dismissal of NYM's Complaint.**

The *Ameritas* factors are non-exclusive guideposts to aid district courts in balancing state and federal interests. *Ameritas*, 411 F.3d at 1331. No single factor is controlling; courts within this Circuit apply a totality-of-the-circumstances analysis. *Id*.; *Nat'l Tr. Ins. Co. v. S. Heating and Cooling Inc*, 12 F.4th 1278, 1282-83 (11th Cir. 2021). The nine factors include:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" - that is, to provide an arena for a race for res *judicata* or to achieve a federal hearing in a case otherwise not removable;

---

[4] The law of the state where the policy was issued governs coverage disputes. *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CV-81397-KAM, 2015 U.S. Dist. LEXIS 102445, at *2-4 (S.D. Fla. Aug. 5, 2015) (applying New York law to govern the interpretation of the insurance policies issued in New York). Here, the Policies were issued to Roc Nation in New York, so New York law controls. [DE 1-2, at 17; DE 1-3, at 10].

[5] The co-defendant in this case, Ms. Hadley, is not a necessary party to this declaratory relief action or the New York State Action. She is not an insured under the Policies and, therefore, has no standing to assert rights under the Policies. *Zee v. Ironshore Specialty Ins. Co.*, No. 12-61222-CIV-DIMITROULEAS, 2012 U.S. Dist. LEXIS 194847, at *7 (S.D. Fla. Nov. 30, 2012) (holding that "[b]ecause Plaintiff is not an insured, she has no standing to assert a cause of action against an insurance company"). Not a single count in NYM's declaratory judgment action is asserted against Mrs. Hadley. [DE 1].

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331. Each of these factors weigh in favor of dismissal of NYM's instant declaratory judgment action.

### 1. The *Ameritas* Factors Involving Comity and New York's Interest in Resolving This Dispute Weigh in Favor of Dismissal.

In analyzing the *Ameritas* factors, courts often group factors one, five and nine together. "The first, fifth, and ninth *Ameritas* factors look to concerns of comity and the interest of the forum state in resolving the legal issues presented." *Endurance*, 403 F. Supp. at 1308. In *Endurance*, the Court held that these factors weighed in favor of dismissal of an insurer's declaratory judgment action because they simply involved state law issues, could have significant implications for insurance coverage under the state's law, and there was no federal nexus except for the presence of diversity jurisdiction. *Id*. at 1309; *see also Origis*, 2023 U.S. Dist. LEXIS 196642, at *7-8; *10 (dismissal of insurer's declaratory action warranted in light of pending parallel state action due to the "potential for friction inherent in having double-tracked, near-identical litigation pending in both federal and state courts, such that the first court's ruling on a particular issue may have res judicata effect on the second court's ability to hear and decide the same issue, even if the second

9

court disagrees with the first court's determinations."(citation omitted)).

Here, the same considerations apply with even greater force. New York has a substantial interest in having its state courts preside over this dispute because New York state law—not federal law—governs insurance law, including the duties owed by insurers to their insureds. Both NYM and Roc Nation are New York entities, the Policies were issued in New York, and the coverage obligations at issue are governed by New York insurance law. The State of New York has a compelling interest in ensuring that its own courts interpret and apply these state-law obligations, particularly where, as here, the dispute raises questions of insurance coverage that may have significant implications for how New York's insurance regulatory framework is applied.

Moreover, allowing this case to proceed in the face of the pending New York State Action creates a "'potential for friction'" in inconsistent rulings that courts in this district warn against. *See Origis*, 2023 U.S. Dist. LEXIS 196642, at \*10 (citation omitted). The underlying issues in this case exclusively involve the interpretation of an insurance contract under New York law. There is no federal question presented; this Court's jurisdiction rests solely on diversity of citizenship—a basis that NYM manufactured by strategically omitting Roc Nation from this action. A New York state court is better suited to analyze these New York law issues than a Florida federal court. Accordingly, factors one, five, and nine weigh heavily in favor of dismissal.

### 2. NYM's Decision to File the Declaratory Judgment Action in the Southern District of Florida Constitutes Improper Forum Shopping and "Procedural Fencing."

The fourth *Ameritas* factor considers whether the declaratory remedy is being used merely for the purpose of "procedural fencing" and creating a "race for res judicata" or to achieve a federal hearing in a case otherwise not removable. *Origis*, 2023 U.S. Dist. LEXIS 196642 at \*9-10; *Endurance*, 403 F. Supp. 3d at 1310. This factor also weighs in favor of dismissal. NYM's decision to file suit against just *one* of its impacted insureds in Florida, rather than in New York, was not

10

designed to resolve the entire insurance controversy as to all the Roc Nation Insureds but to manufacture diversity jurisdiction and secure a tactical advantage in a forum of NYM's choosing.

The facts of this case demonstrate nothing more than a pure race for res judicata and an attempt to achieve a federal hearing in a case otherwise not removable. The New York State Action is not removable to federal court because there is not complete diversity between the parties: both Roc Nation and NYM maintain their principal places of business in New York. To avoid this jurisdictional hurdle, NYM instead filed this narrow declaratory judgment action in the Southern District of Florida, strategically omitting Roc Nation from the suit entirely.

The fact that NYM omitted the Named Insured from the instant action is a plain demonstration of NYM's improper "procedural fencing." Had NYM included Roc Nation in this action, complete diversity would have been destroyed and this Court would lack subject matter jurisdiction under 28 U.S.C. § 1332. NYM's deliberate exclusion of Roc Nation was not an oversight—it was a calculated maneuver to create "complete diversity" and secure a federal forum that would otherwise be unavailable.

NYM's procedural fencing is further demonstrated by the timing of its filing. NYM issued its coverage position letter on March 23, 2026, and filed this action just eleven days later on April 3, 2026—racing to this Court before Roc Nation could respond to the points raised in its letter. Notably, the Roc Nation Insureds had already retained their own counsel and were actively defending themselves in the *Hadley* Action; there was no pressing need for NYM to immediately file a declaratory judgment action, and its haste to do so confirms that the filing was ill motivated and demonstrated forum shopping rather than in response to any legitimate coverage concern. The fourth *Ameritas* factor therefore weighs strongly in favor of dismissal.

11

**3.      New York State Court is in Superior Position to Resolve the Present Coverage Dispute.**

The seventh and eighth *Ameritas* factors weigh in favor of dismissal. The "'seventh and eighth *Ameritas* factors examine the ability of the state court to resolve the legal and factual issues relative to the federal court.'" *Endurance*, 403 F. Supp. 3d at 1309 (citation omitted).

Where a case involves the interpretation of insurance contracts, state law controls, and state trial courts are in a better position to adjudicate those coverage issues. *Origis*, 2023 U.S. Dist. LEXIS 196642 at *11. The underlying issues in this case exclusively involve the interpretation of a New York insurance contract under New York law. The coverage dispute turns on the application of New York insurance law principles, including the scope of an insurer's duty to defend, the construction of policy exclusions, and trigger of coverage. These are quintessential state-law questions that New York courts routinely adjudicate and have developed a substantial body of jurisprudence to address.

A New York state court is better suited to analyze these New York law issues than a Florida federal court. The New York State Action, pending in the Supreme Court of the State of New York, presents the identical coverage questions concerning NYM's duties under the Policies, but does so before a court with specialized expertise in New York insurance law and direct familiarity with the regulatory framework governing insurers domiciled in that state. By contrast, this Court would be required to apply New York substantive law as a federal court sitting in diversity in Florida—a task that, while permissible, is better served by the state court that developed and regularly applies such law. *See, e.g., id.* Accordingly, these factors weigh in favor of dismissal.

**4.      The New York State Action Provides Superior Judicial Efficiency and Economy.**

The second, third, and sixth *Ameritas* factors weigh in favor of dismissing NYM's Complaint. "The second, third, and sixth *Ameritas* factors look to, in essence, whether 'the

12

declaratory judgment action is the most efficient and economical forum to resolve the rights of all the parties'; in other words, whether it could settle the whole controversy, clarify the legal relations at issue, and provide a better remedy than the alternative forum." *Endurance*, 403 F. Supp. 3d at 1309 (citation omitted). The court in *Endurance* held that the parallel state court action was more comprehensive than the federal declaratory action and weighed in favor of dismissal. *Id*. There the court noted that parties were missing from the declaratory action, and therefore the federal proceeding "could not settle the whole controversy." *Id*. at 1310. The court concluded that "[t]o allow the instant declaratory action to proceed would run the risk of inconsistent decisions and amount to '[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation.'" *Id*. (quoting *W. Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Tr.*, No. 09-81049-CIV, 2010 U.S. Dist. LEXIS 151589, at *18, 19-20 (S.D. Fla. May 14, 2010) (holding that "in the interests of conservation of judicial resources, the potential for inconsistent judgments, and in light of the strong policy interest of [the state] in this litigation," abstention was warranted).

Similarly, in *Origis*, the court found that a judgment in the federal action would not settle the controversy because joining the other insurers would destroy diversity jurisdiction, leaving the court without jurisdiction to provide complete relief. *Origis*, 2023 U.S. Dist. LEXIS 196642 at *8-9. Without all necessary parties, the court could not offer full resolution and risked inconsistent verdicts. *Id.* at *9. Accordingly, the court held that "[t]he state court remedy, that would involve all relevant insurers, would be better and more effective than the resolution of the dispute only between the parties to this action." *Id.* at *10-11.

Here, as in *Endurance* and *Origis*, this declaratory judgment action will not settle the full controversy because it omits crucial parties to the dispute. NYM strategically excluded Roc Nation, as well as another Roc Nation employee, both of which were named defendants in the

13

*Hadley* Action, incurred defense fees, and were part of Roc Nation's tender of the insurance claim, which NYM denied. Without these indispensable parties, this Court cannot resolve the full scope of the coverage dispute between NYM and the Roc Nation Insureds, and any judgment entered here would address only a fraction of the parties' rights and obligations under the Policies.

Even if a decision in this action could provide some clarity on the issues presented, it would not provide complete relief. The New York State Action encompasses the full coverage dispute—including NYM's duties to Roc Nation, Ms. Anderson, and Mrs. Perez—while this action addresses only NYM's obligations to Mrs. Perez. Allowing this action to proceed alongside the New York State Action would lead to the very risk of inconsistent verdicts that the *Endurance* court warned against, as two courts would be simultaneously interpreting the same Policies, applying New York law, and potentially reaching conflicting conclusions regarding coverage.

The New York State Action provides an alternative remedy that is better and more effective. Unlike this narrow federal proceeding, the New York State Action would resolve the full scope of the coverage dispute as to all Insureds under the Policies in connection with the *Hadley* Action, including NYM's breach of its duties and the consequential damages flowing from NYM's bad faith claims handling. Moreover, because New York law governs the Policies at issue, it is preferable that New York state courts adjudicate the legal issues presented. The second, third, and sixth *Ameritas* factors therefore weigh decisively in favor of dismissal.

**II.     Regardless of how this Court Resolves the *Ameritas* Analysis, it must Dismiss NYM's Duty to Indemnify Counts (VIII–XIV) for Lack of Subject Matter Jurisdiction because those Claims are not Ripe under Article III.**

This Court has no jurisdiction over Counts VIII-XIV and must be dismissed. Rule 12(b)(1) applies to challenges of a court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss.,*

14

*Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "Generally, the plaintiff must allege, with particularity, facts necessary to establish jurisdiction and must support his allegation if challenged to do so." *Barker v. Cap. One, N.A.*, 801 F. Supp. 3d 1327, 1330 (S.D. Fla. 2025)  (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000))[6].

These indemnity claims present an independent and insurmountable jurisdictional defect: they are not ripe. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). The case or controversy requirement includes a "ripeness requirement [that] prevents the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999) (citation and internal quotation marks omitted).

"Because a claim that lacks ripeness is not justiciable, the absence of ripeness ***precludes*** the exercise of federal jurisdiction." *Cowan v. Provident Life & Accident Ins. Co.*, No. 18-CV-21156, 2018 U.S. Dist. LEXIS 223448, at *6 (S.D. Fla. Nov. 28, 2018) (emphasis added); *see also Mulhall v. Unite Here Local 355*, 618 F.3d 1279, 1291 (11th Cir. 2010) (describing ripeness as "one of the several strands of justiciability doctrine . . . that go to the heart of the Article III case or controversy requirement" (citation and internal quotation marks omitted)); *S.-Owners Ins. Co. v. Highwoods Contracting Corp.*, No. 6:22-cv-2177-CEM-RMN, 2023 U.S. Dist. LEXIS 165613, at *5 n.3 (M.D. Fla. Sep. 18, 2023) (citing *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 805 (11th Cir. 2009) ("If Plaintiff asserts an unripe indemnification claim, the Court must dismiss

---

[6] While some litigants bring this argument under Fed. R. Civ. P. 12(b)(6), courts have held that the "ripeness argument is more appropriately addressed under Rule 12(b)(1) for lack of jurisdiction." *Goodwin v. Walton County Florida*, 248 F. Supp. 3d 1257, 1265 n.3 (N.D. Fla. 2017). Either way, NYM's indemnity claims should be dismissed under either 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure for being unripe.

it for lack of subject matter jurisdiction.”)). Accordingly, “[a] claim that fails ripeness should be dismissed for lack of subject matter jurisdiction.” *Cowan*, 2018 U.S. Dist. LEXIS 223448, at *6 (citing Fed. R. Civ. P. 12(b)(1)); *Depositors Ins. Co. v. BGW Design Ltd.*, No. 17-23885-Civ-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 33666, at *9-10 (S.D. Fla. Feb. 28, 2018) (dismissing indemnity claims for lack of jurisdiction before underlying claim resolved).

This principle is well-settled in the insurance context. Because an insurer’s duty to indemnify turns not on the allegations of the complaint but on the actual facts ***established*** at trial or through settlement, “[a]n insurer’s duty to indemnify is not ripe for adjudication in a declaratory judgment action ***until the insured is in fact held liable in the underlying suit***.” *Smithers Constr., Inc. v. Bituminous Cas. Corp.*, 563 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) (emphasis added) (citation omitted); *see also Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App’x 768, 770 (11th Cir. 2019) (agreeing with many district courts that declaratory judgment actions regarding the duty to indemnify are “not ripe for adjudication until the underlying lawsuit is resolved”); *J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 F. App’x 918, 927 (11th Cir. 2014) (“The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims.”). The Eleventh Circuit has been unambiguous on this point: until the underlying litigation concludes, no court can adjudicate the duty to indemnify.

This principle applies with full force here. NYM’s indemnity claims (Counts VIII-XIV) rest entirely on contingent future events—namely, a finding of liability against Mrs. Perez in the *Hadley* Action and a determination of the facts and circumstances giving rise to that liability. None of these prerequisites has been satisfied. The *Hadley* Action remains pending; discovery is ongoing; no verdict, judgment, or settlement has been reached with Mrs. Perez. Yet NYM asks this Court to make precisely the kind of fact-bound determinations that the Eleventh Circuit has

held must await resolution of the underlying action, including the *mens rea* involved in the alleged conduct in the *Hadley* Action and whether that conduct fell within corporate or personal capacities. These are all unadjudicated facts that impact the trigger of coverage and the applicability of certain policy exclusions. Each of those determinations depends on facts that have not been, and cannot be, established until the underlying *Hadley* Action is resolved. Simply put, NYM is asking this Court to issue an advisory opinion on hypothetical facts, which is precisely what Article III forbids. Because NYM's duty-to-indemnify claims are not ripe, this Court lacks subject matter jurisdiction over Counts VIII through XIV, and they must be dismissed under Rule 12(b)(1).

**III.     Alternatively, this Court Should Exercise its Inherent Authority and Stay this Action Pending Resolution of the New York State Action and the *Hadley* Action.**

Even if this Court declines to dismiss NYM's Complaint, it should exercise its authority to stay these proceedings in their entirety pending resolution of both the New York State Action and the *Hadley* Action. The authority to do so is well-established. "The inherent discretionary authority of the district court to stay litigation pending the outcome of [a] related proceeding in another forum is not questioned." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982). The Supreme Court has long recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Courts within this District have consistently followed. *See Kilpatrick v. Caribbean Cruise Line, Inc.*, No. 14-cv-61572-BLOOM/Valle, 2014 U.S. Dist. LEXIS 139382, at *3 (S.D. Fla. Sept. 29, 2014) ("The power to issue a stay arises from the district court's inherent authority to control its docket and manage its cases efficiently."); *200 Leslie Condo. Ass'n v. QBE Ins. Corp.*, No. 10-61984-CIV-ROSENBAUM, 2011 U.S. Dist. LEXIS

17

65720, at *45 (S.D. Fla. Jun. 21, 2011) ("Federal courts may exercise their discretion to stay proceedings when a stay would promote judicial economy and efficiency.").

This inherent authority is particularly compelling where, as here, a declaratory judgment action is pending before the court alongside parallel state proceedings. *Great Lakes Reinsurance PLC v. Leon*, 480 F. Supp. 2d 1306, 1309 (S.D. Fla. 2007) (the court held that "the claims and defenses of all parties in interest can be fully adjudicated in the state proceeding" and therefore stayed the parallel federal proceeding). In such cases, the Supreme Court's admonition in *Brillhart* to avoid "uneconomical" and "vexatious" concurrent proceedings applies with full force. *Brillhart,* 316 U.S. at 494-95. Guided by this principle, the court in *Great Lakes Reinsurance PLC* stayed an insurer's federal declaratory judgment action filed in the Southern District of Florida in deference to a pending parallel state court action to ensure "'that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.'" 480 F. Supp. 2d at 1309 (quoting *Wilton*, 515 U.S. at 288 n.2). The court specifically noted that both the federal and state proceedings involved the same issue—the proper interpretation of the insurance contract—making a stay the most prudent course. *Id*. at 1308.

Importantly, the Court's authority to stay this action is not diminished by the fact that the parties in the parallel proceedings are not perfectly identical. Courts in this District have squarely rejected the argument that a stay requires complete identity of parties. *See id*. at 1309 (holding that parties need not be completely identical for the court to stay the case); *Gregory Haskin Chiropractic Clinics, Inc. v. State Farm Mut. Auto. Ins. Co.*, 391 F. Supp. 3d 1151, 1153, 1156 (S.D. Fla. 2019) (granting stay and holding "that the parties do not have to be perfectly identical for the district court to exercise its discretion to stay the case"); *Mid-Continent Cas. Co. v. Gozzo Dev., Inc.*, No. 17-80362, 2017 U.S. Dist. LEXIS 134185, at *11-12 (S.D. Fla. July 19,

18

2017) ("Indeed, nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues." (citation omitted)). Nor do they have to involve identical causes of action. *Id*. at *2-5. The relevant inquiry is whether the proceedings involve sufficiently overlapping issues such that a stay would promote judicial economy. This standard is amply satisfied here.

This case presents a compelling basis for exercising the Court's inherent authority to stay NYM's declaratory judgment action. Three proceedings currently involve overlapping parties, issues, or insurance policies: (1) the underlying *Hadley* Action; (2) the parallel coverage New York State Action; and (3) this declaratory judgment action. Resolution of the New York State Action and the *Hadley* Action is required to address the questions regarding NYM's obligations to its Insureds presented in the instant declaratory judgment action.

First, the New York State Action will resolve the full scope of the coverage dispute between NYM and all of its impacted Insureds—Roc Nation, Mrs. Perez, and Ms. Anderson—in a single, comprehensive proceeding. The New York State Action seeks adjudication of NYM's defense obligations to its Insureds in connection with the *Hadley* Action. Unlike this narrow federal action, which addresses only a fraction of the parties' rights and obligations, the New York State Action encompasses the entire coverage controversy. Staying this action in favor of the more comprehensive New York proceeding will avoid the risk of inconsistent judgments, prevent duplicative litigation, and conserve the resources of this Court, the parties, and their counsel.

Second, a stay is warranted because the *Hadley* Action has not been resolved and the factual predicates necessary to adjudicate NYM's indemnity claims have not been established. The *Hadley* Action remains active. The key factual questions that will determine NYM's defenses to coverage, including the trigger of cover and the application of certain policy exclusions, are the very issues

19

being litigated in the *Hadley* Action. Until those facts are adjudicated, this Court cannot resolve the coverage dispute without issuing what would amount to an impermissible advisory opinion. A stay preserves the Court's ability to adjudicate the coverage questions once the underlying facts have been established, while avoiding the waste of judicial resources on premature determinations.

Third, a stay provides the Court an alternative means to preserve the interests of all parties. As the *Great Lakes Reinsurance PLC* court recognized, a stay ensures "'that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.'" 480 F. Supp. 2d at 1309 (quoting *Wilton*, 515 U.S. at 288 n.2). Here, a stay would allow the New York State Action and the *Hadley* Action to resolve without interference from this Court, while preserving NYM's right to return to this forum if necessary. This respects the principles of judicial economy, federalism, and comity, while imposing no prejudice on any party. Should the Court decline to dismiss NYM's Complaint, at a minimum it should exercise its inherent discretionary authority and stay this action in its entirety pending resolution of the New York State Action and the *Hadley* Action.

## CONCLUSION

For the foregoing reasons, Mrs. Perez respectfully requests that the Court: (1) decline to exercise its discretion under the Declaratory Judgment Act and dismiss NYM's Complaint in its entirety; (2) dismiss NYM's duty-to-indemnify claims (Counts VIII-XIV) without prejudice for lack of subject matter jurisdiction; or, (3) in the alternative, stay this action pending resolution of the New York State Action and the *Hadley* Action.

## REQUEST FOR ORAL ARGUMENT

Mrs. Perez respectfully requests oral argument on this Motion.

21

Dated: June 29, 2026

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, FL  33131
Tel:  (305) 374-8500
Fax: (305) 789-7799

By: */s/ Edward Diaz*
Edward Diaz
Email: edward.diaz@hklaw.com
Florida Bar No. 991200
Manuel A. Miranda
Email: manuel.miranda@hklaw.com
Florida Bar No. 119302

***Counsel for Defendant Desiree Perez***

## <u>CERTIFICATE OF SERVICE</u>

*I Hereby Certify* that on June 29, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF electronic system, which will serve a copy to all counsel of record on this matter.

*/s/ Edward Diaz*
Edward Diaz

22